RHONDA TROTTER (State Bar No. 169241)
Email address:  rtrotter@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone:  (310) 788-1000
Facsimile:  (310) 788-1200

Attorneys for Defendant
Walt Disney Parks and Resorts U.S., Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.L., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WALT DISNEY PARKS AND<br>RESORTS U.S., INC.,<br><br>　　　　　Defendant. | Case No. 2:14-cv-03327-R-RZ<br><br>**MEMORANDUM OF LAW IN SUPPORT OF WALT DISNEY PARKS AND RESORTS U.S., INC.'S MOTION TO TRANSFER VENUE** |

Pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney"), by and through its attorneys, hereby moves to transfer this case to the U.S. District Court for the Middle District of Florida.

## PRELIMINARY STATEMENT

This case challenges the steps Disney has taken to accommodate persons with autism and other cognitive disabilities at the Walt Disney World Resort ("WDW") in Florida and the Disneyland Resort in California, referred to generally as the Disability Access Service or "DAS."  Notably, 24 of the 26 plaintiffs (including the lead plaintiff A.L.) who brought this case in California *only* complain of experiences in Florida.  Similarly, 24 of the 26 do *not* reside in California; indeed, most of them live in Florida or in other east coast states.  Because nearly *all*

of the park visits described in the 171-page Complaint allegedly took place in Florida and not California, virtually all of the Disney employees who sought to accommodate the plaintiffs and whose alleged actions are described in the Complaint also work and live in Florida, not California.  In short, plaintiffs had almost no contact with Disneyland or California.  Accordingly, this Court should transfer venue.

### ARGUMENT

Section 1404(a) specifically authorizes transfer of this action to the Middle District of Florida by providing, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *see also Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).  The purpose of this section is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations omitted).  This case could have been brought in the Middle District of Florida because defendant resides in Florida and most of the events giving rise to plaintiffs' claims occurred there, and the factors used in the Ninth Circuit in assessing a motion to transfer under 1404(a) weigh heavily in favor of transferring this case to the Middle District of Florida.

### I.   VENUE IS PROPER IN THE MIDDLE DISTRICT OF FLORIDA

The threshold question under Section 1404(a) is whether this case could originally have been brought in the Middle District of Florida.  *See* 28 U.S.C. § 1404(a).  Venue is proper in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred" or "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. §§ 1391(b)(2), (b)(3).  For purposes of venue, a corporation "shall be deemed to reside . . . in any judicial district in which such

defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).

In the instant case, plaintiffs claim that Disney's DAS card program violates the Americans with Disabilities Act ("ADA") and state law because it allegedly failed to accommodate their special needs when they visited Disney's theme parks. Compl. ¶¶ 1, 30, 36.[1]  From the face of the Complaint alone, there can be no dispute that the overwhelming center of gravity in this case is in Florida.

Disney is subject to personal jurisdiction in Florida because it is a Florida corporation which maintains its principal place of business in Orange County, Florida, and because it owns and operates the four theme parks at WDW in Florida. Compl. ¶ 3.  Thus, this case could have (and should have) been brought in the Middle District of Florida for the oldest and most common of reasons -- almost all of the events giving rise to plaintiffs' claims occurred in Florida and Disney is subject to personal jurisdiction there.  *See* 28 U.S.C. §§ 1391(a)(3), (b)(2).  That it was brought in California can only be due to some perceived tactical advantage plaintiffs saw in filing in this Court.

## II.   THE RELEVANT SECTION 1404(a) FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER

Once it is established that the action could have been brought in the proposed transferee forum, the court must determine whether "the convenience of the parties," "convenience of the witnesses" and "the interests of justice" make transfer appropriate.  28 U.S.C. § 1404(a); *Los Angeles Mem. Coliseum Comm. v. National Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984).  In making such determination, courts will consider private and public interest factors which affect the convenience of the forum.  *Decker Coal Co. v.*

---

[1]  Disney categorically and absolutely denies those allegations.  *See generally* Dkt. 40, Def.'s Answer.

*Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  California courts have determined that the private factors include "[t]he relative ease of access to sources of proof [and the] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Los Angeles Mem. Coliseum Comm.*, 89 F.R.D. at 499; *see also Decker Coal*, 805 F.2d at 843.  The public interest factors include "the local interest in having localized controversies decided at home [and] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action. . . ."  *Decker Coal*, 805 F.2d at 843 (internal citations omitted).

"The Court is to interpret these factors broadly, and to apply them to the particular facts of each individual case."  *Paaluhi v. U.S.*, No. 05-3997, 2006 WL 5671235, at *1 (C.D. Cal. Feb. 1, 2006).  Not all of these factors carry the same weight, and the main focus under Section 1404(a) is to determine the location of the center of gravity of the litigation.  *Id*. at *2 (finding that transferring venue was warranted because "the majority of the operative facts" took place in the transferee forum).  Thus, the most important factors are the convenience of the parties and witnesses, which necessarily incorporates the locus of operative facts and events.  As shown below, these factors weigh heavily in favor of transfer, and therefore the Court should transfer this case to the Middle District of Florida.  *See Eye Laser Care Center, LLC v. MDTV Medical News Now, Inc.*, No. 03-cv-371, 2007 WL 2873782, at *1-2 (S.D. Cal. Sept. 28, 2007) (granting transfer where "most" of plaintiffs' claims were based upon operative facts that occurred in the transferee forum even though one of the plaintiffs resided in the chosen forum).

A.    **Plaintiffs' Choice of Forum Is Entitled to Little Weight**

Ordinarily, a plaintiff's choice of forum is afforded significant weight under Section 1404(a).  *Metz v. United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009).  However, "a foreign plaintiff's [forum] choice deserves less

deference than the forum choice of a domestic plaintiff." *Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1158 (C.D. Cal. 2005) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)); *see also In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (foreign plaintiff's choice of forum "entitled to substantially less deference" because there is less reason to assume convenience in a foreign forum). A plaintiff's choice of forum is entitled to even less deference if most of the operative facts in the case took place outside the chosen forum. *See F.T.C. v. Watson Pharmaceuticals, Inc.*, 611 F.Supp.2d 1081, 1089 (C.D. Cal. 2009) (granting transfer where "most important operative facts" occurred in transferee forum); *Paaluhi*, 2006 WL 5671235, at *2 (concluding that "the fact that *most of the operative facts* in the case took place outside of this forum, leads the Court to attach minimal weight to plaintiff's choice of forum") (emphasis added); *Saleh*, 361 F.Supp. 2d at 1160 (transferring venue where the chosen forum did not have a "substantial relation to plaintiff's action").

Here, the plaintiffs overwhelmingly reside in Florida or in states which are much closer to Florida than California and their claims arise from alleged facts and circumstances arising in Florida. In fact, the DAS card program was primarily designed by Disney employees at WDW in Florida, and its implementation (including employee training) at the WDW theme parks took place in Florida. *See* Declaration of Alison Armor ("Armor Decl.") ¶ 6. When only a very small percentage of the plaintiffs has any significant connection with the chosen forum, the Court should disregard their choice of forum. *See, e.g.*, *Yesford v. City of McFarland*, No. 11-10115, 2012 WL 762554, at *3 (C.D. Cal. Mar. 8, 2012) (granting motion to transfer from the Central District to the Eastern District of California where one of two plaintiffs and none of the defendants resided in the chosen forum); *Adachi v. Carlyle/Galaxy San Pedro L.P.*, 595 F.Supp.2d 1147, 1151-52 (S.D. Cal. 2009) (granting motion to transfer where only one of 239 prospective class members was a resident in the Southern District of California).

5

Further undermining the weight afforded to plaintiffs' choice of forum in this case is its similarity to a class action.  The Ninth Circuit, like other courts, has noted that "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  A plaintiff's choice of forum is traditionally discounted in representative suits because the "accidental residence" of a named plaintiff does not necessarily bear any relationship to the case's center of gravity.  *See Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524-25 (1947); *see also McCormack v. Safeway Stores, Inc.*, 2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2012) (noting that "a fundamental principle underpinning the § 1404(a) analysis is that litigation should proceed in that place where the case finds its 'center of gravity.'").  The Ninth Circuit's reasoning similarly applies to this multi-plaintiff case where the 26 named plaintiffs come from eight different states across the country, and 24 of them are foreign plaintiffs.

The plaintiffs have strong connections with Florida and all but two of them assert claims related to their visit (or attempted visit) to WDW[2] in Florida.[3]  Those claims account for more than 90% of the allegations in the complaint.[4]  In fact, other than plaintiff T.P. and his mother, none of the plaintiffs resides in California, visited Disney's theme parks in California, or claims to have been injured in

---

[2]  While D.L.J. claims that she "would be inclined to visit Disneyland and Walt Disney World Parks" with her children, C.M.J. and D.M.J., the family vacation they planned in September 2014 -- which she refers to as a "trial-and-error trip to Florida" -- is to visit WDW in Florida.  *See* Compl. ¶¶ 510, 517, 521, 530, 537, 542.

[3]  *See* Compl. ¶¶ 78, 101, 121, 193, 234, 257, 291, 345, 362, 410, 510, 530, 559, 577, 628.

[4]  Out of 574 paragraphs in plaintiffs' individual cause of action section of the complaint, only 53 paragraphs relate to events that allegedly occurred in California.

California.[5]  In short, the residence in this District of just two plaintiffs cannot possibly make California the center of gravity of this case, and should not be allowed to prevent transfer when all of the other relevant Section 1404(a) factors weigh heavily in favor of transferring this case to the Middle District of Florida. Under these extreme circumstances, plaintiffs' choice of forum is entitled to little weight.

**B.** **The Middle District of Florida Is More Convenient for the Parties**

When considering the convenience of the parties, the relevant starting point is the residence of the parties.  Here, nearly half of the plaintiffs currently reside in Florida and all but two of them were visiting or planning to visit WDW in Florida when their alleged claims arose.  In fact, transfer is almost certain to make litigation more convenient for *plaintiffs*, because it would result in far less travel for them to attend depositions and the trial, instead of having to travel across the country to California.  Thus, transferring this case to the Middle District of Florida would clearly reduce travel time and costs, and would not impose any additional inconvenience on plaintiffs collectively.

The Middle District of Florida is also more convenient for Disney.  Disney has its principal place of business in Florida and WDW is located in the Middle District of Florida. Dkt. 1, Compl. ¶ 3.  In fact, the Disney employees who interacted with the plaintiffs who visited WDW undoubtedly either live or work in Florida or both.  *See* Armor Decl. ¶ 12.  Litigating in the Middle District of Florida would also facilitate the collection of evidence because most of the key documents relating to plaintiffs' allegations would be located there.  *Id*. ¶ 14.  Therefore, the

---

[5]  On the other hand, 12 plaintiffs live in Florida and are a short drive from WDW. Compl. ¶¶ 73, 97, 181, 352, 397 & 568.  The remaining plaintiffs are from six different states (Connecticut, Ohio, Pennsylvania, South Carolina, Virginia and Michigan), and traveled to Florida to visit WDW.  *See* Compl. ¶¶ 119, 231, 247, 282, 332, 506, 526, 547, 617.

convenience of the parties factor strongly favors transfer to the Middle District of Florida.

**C.     The Middle District of Florida Is a More Convenient Forum for the Witnesses**

The relative convenience of witnesses, particularly non-party witnesses, is often recognized as "the most important factor" to be considered in ruling on a motion to transfer venue under Section 1404(a).  *Saleh*, 361 F.Supp.2d at 1161; *A.J. Industries, Inc. v. United States District Court*, 503 F. 2d 384, 389 (9th Cir. 1974). In evaluating the convenience of the witnesses, the court "must consider not simply how many witnesses each side has and the location of each, but . . . the importance of the witnesses."  *Saleh*, 361 F.Supp.2d at 1161.

To the extent the employees with whom plaintiffs interacted are currently employed at WDW, they work or reside in Florida, and are likely to testify regarding the facts and circumstances surrounding plaintiffs' allegations.  Armor Decl. ¶ 12.[6]  In fact, the Complaint specifically identifies an employee, Justin Patterson (Compl. ¶ 260), who works and lives in Florida.  Armor Decl. ¶ 13. Other witnesses who will be of central importance to the resolution of plaintiffs' claims are senior management employees from WDW's Guest Relations, Guest Communications, Standards and Auditing, and Operations departments, all of whom work and reside in Florida.  *Id*. ¶¶ 5, 7-11.  These witnesses are familiar with the development, implementation and/or administration of the DAS card program at WDW.  *Id*.

Furthermore, plaintiffs themselves will likely testify in this case and may choose to call their family members, friends, medical providers, and other individuals to testify about plaintiffs' alleged disabilities, purported injuries and the

---

[6]  If these witnesses are no longer employed at Disney, their residence in Florida along with this District's inability to compel their attendance at trial only lends further support to this motion.  *See infra* Section II.D.

experiences they allegedly had while visiting Disney's theme parks, both prior to and after Disney's implementation of the DAS card system.  Given that almost half of the plaintiffs reside in Florida, it is likely that an equivalent percentage of witnesses also reside there and would not have to travel a long distance for deposition and trial if this case were transferred to the Middle District of Florida.  On the other hand, if this case remains in this District, all of the witnesses for the 24 foreign plaintiffs will likely have to travel across the country for deposition and trial.

Transfer is thus appropriate because on this most important factor, the bottom line is that the vast majority of witnesses in this case would be required to travel great distances to participate in this case if it remains in this District.

**D.**      **The Availability of Process to Compel Testimony Favors Transfer**

The witnesses who are likely to give testimony concerning plaintiffs' experiences at the parks will be current and former Disney employees.  These witnesses mostly reside in Florida or work at Disney's WDW resort in Florida. Armor Decl. ¶ 12.[7]  Because park employee positions are often short-term, several of these employees will no longer work at Disney by the time they are asked to testify at trial.  *Id*.  As a result, these potential non-party witnesses, most of whom are likely to be from Florida or at least from states closer to Florida than California, could not be compelled to testify in this District.

Based on plaintiffs' claims, there are numerous witnesses who are not subject to compulsory process in this District, such as family members and friends who accompanied plaintiffs during their visits to Disney's theme parks, as well as medical providers who are familiar with plaintiffs' disabilities.  The majority of

---

[7]  The Disney employees who interacted with T.P. and his mother during their visit to Disneyland likely work or live in California.  But this small number of potential witnesses in California is far outweighed by the number of witnesses in Florida.

these witnesses are likely to reside in Florida.  Therefore, the availability of process to compel the attendance of these witnesses at trial weighs in favor of transferring this case to the Middle District of Florida.  *See*, *e.g.*, *Blankenship v. Medtronic, Inc.*, 2013 WL 3322031, at *4 (C.D. Cal. June 7, 2013) (granting transfer even though potential non-party witnesses were located in California because the nature of plaintiff's claims meant that the majority of non-party witnesses were likely to be residents of transferee forum); *Dawson v. Medtronic, Inc.*, 2013 WL 3322040, at *3 (C.D. Cal. Mar. 8, 2013).

**E.    Nearly All of the Plaintiffs Contractually Agreed to Litigate This Case in Florida**

24 of the 26 plaintiffs either visited or attempted to visit WDW in Florida.[8] By purchasing a ticket or annual pass to visit WDW, these plaintiffs have already agreed to litigate this case in Florida.[9]  Specifically, the terms and conditions for the tickets and annual passes for WDW include a forum selection clause, which provides that "all claims for injury or loss arising incident to presence on [WDW] property *shall be litigated in Florida*."  Armor Decl. ¶¶ 15-16, Exhibits A and B (standard RFID ticket and annual pass for WDW).  While the Disneyland annual passes purchased by plaintiff S.P. for herself and her son, T.P., would have included a forum selection clause that provides for their claims to be litigated in California, all of the other plaintiffs who purchased a ticket or annual pass to visit WDW have agreed to litigate their claims in Florida.

_____

[8]  *See* Compl. ¶¶ 78, 101, 121, 193, 234, 257, 291, 345, 362, 410, 510, 530, 559, 577, 628.

[9]  Of the 24 foreign plaintiffs, three plaintiffs -- who have asserted only ADA claims against Disney -- allege that they either cancelled their trip to WDW or refused to visit WDW because of the DAS card program.  *See* Compl. ¶¶ 240, 346, 559.  Therefore, it is unclear from plaintiffs' complaint whether these three plaintiffs purchased a ticket or annual pass to visit WDW.

A forum selection clause is "a significant factor that figures centrally in a district court's calculus" in determining whether to transfer venue. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In fact, courts treat "a forum selection clause . . . as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). Where, as here, there is a valid forum selection clause, the burden shifts to plaintiffs to demonstrate "why they should not be bound by their contractual choice of forum." *Id*. Not only does this "significant factor" negate any deference given to plaintiffs' choice of forum, but it also prevents the plaintiffs who visited WDW from contending that transfer is inconvenient to them. Thus, Disney's forum selection clause supports transferring this case to the Middle District of Florida.

**F.    The Middle District of Florida Is More Familiar with Florida Law**

Although this is not a diversity case, the majority of plaintiffs' claims are likely to be based on state law. Plaintiffs' complaint contains 57 causes of action under federal and state law; however, only 16 of them involve federal law under the ADA. Of the remaining 41 state law claims, 35 (61% of plaintiffs' total claims) involve the application of Florida law on negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of contract. As a result, a substantial portion of plaintiffs' case requires familiarity with Florida law.[10]

While federal courts in California and Florida are equally well-acquainted with the law governing plaintiffs' claims under the ADA, most of the state law claims in this litigation will involve questions of Florida tort and contract law with

_____

[10]   Since the filing of this lawsuit, several individuals -- many of whom appear to be the named plaintiffs in this case -- have filed administrative complaints with the Florida Commission on Human Relations. Therefore, it is likely that plaintiffs will at some point seek to amend their complaint to include disability discrimination claims under Florida law, which only further supports transferring this case to the Middle District of Florida.

which Florida courts have unique familiarity.  This factor too weighs in favor of transfer to Florida.  *See, e.g.*, *Blankenship*, 2013 WL 3322031, at *3 (transferring case to Missouri where only one of plaintiff's claims alleged violations of California law, and the majority of plaintiff's causes of action arose under Missouri law); *Kierstead v. Experian Information Solutions, Inc.*, 2011 WL 1375361, at *2 (C.D. Cal. Apr. 11, 2011) (finding that the complaint's inclusion of a defamation claim under Maine law weighed in favor of transfer to Maine although plaintiff's primary cause of action was under federal law).

## **CONCLUSION**

For the foregoing reasons, Disney respectfully requests that the Court grant its motion and transfer this action to the Middle District of Florida.


Dated:  July 30, 2014                    Respectfully submitted,


                                         /s/ Rhonda Trotter
                                         Rhonda Trotter

                                         Counsel for Defendant Walt Disney Parks
                                         and Resorts U.S., Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.


/s/ Rhonda Trotter
Rhonda Trotter

KAYE|SCHOLER LLP